IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOSE MAURICIO MALAGON, §
§
Plaintiff, §
§ Civil Action No. 3:16-CV-0644-D
VS. §
§
CRESCENT HOTEL AND RESORTS, §
§
Defendant. §

MEMORANDUM OPINION
AND ORDER

In this action by *pro se* plaintiff Jose Mauricio Malagon ("Malagon") alleging claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*,[1] Malagon and defendant Crescent Hotel and Resorts ("Crescent") cross-move for summary judgment, and Crescent moves to strike Malagon's motion as untimely, moves to strike his summary judgment evidence, and moves to strike two of Malagon's experts. For the reasons that follow, the court grants in part and denies in part Crescent's motion for summary judgment, denies Malagon's motion for summary judgment, denies without prejudice as premature Crescent's motion to strike expert witnesses, and denies as moot Crescent's motions to strike Malagon's summary judgment motion and evidence.

---

[1]It is difficult to discern from Malagon's complaint and brief the specific claims he is asserting. For the purposes of this memorandum opinion and order, the court will consider the claims as Crescent has characterized them.

I

In 2012 Crescent took over operation of the Adolphus Hotel in Dallas, where Malagon worked as a valet parking supervisor.[2] Malagon reported directly to Scott Fulce ("Fulce"), the Adolphus parking garage manager. As valet parking supervisor, Malagon had various responsibilities, including serving as the key contact person and supervisor of valet drivers. In April 2012 Malagon requested that Fulce give him Sundays and Mondays off because the evenings were typically were slow and yielded fewer tips. Fulce granted the request, and Malagon was assigned to shifts later in the week, including Friday and Saturday evenings, which were the busiest times.

Malagon alleges that Fulce caused him to suffer from anxiety and depression. Malagon testified at his deposition that he requested accommodations for his conditions when, on February 26, 2014, he gave a letter to Fulce signed by Dr. Erika Navarro ("Dr. Navarro") detailing necessary accommodations. Dr. Navarro stated that Malagon "suffers from an anxiety disorder that is exacerbated by work-related stress." D. App. 91. She recommended that he "be switched to Monday through Thursday shifts, which are less stressful." *Id.* Crescent disputes receiving Dr. Navarro's letter.

Malagon resigned as valet parking supervisor effective April 11, 2014, writing that

---

[2]Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence. *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

he "was advised by [his] doctor to decrease [his] work activities immediately[.]" D. App. 92.³ Malagon then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging retaliation and disability discrimination under the ADA. The EEOC denied his charge, concluding that it was unable to find that Crescent violated the ADA.

Malagon then filed the instant suit challenging the EEOC's decision and alleging discrimination and retaliation claims against Crescent under the ADA and Title VII. Malagon amended his complaint to add a harassment claim under Title VII, appearing to allege the use of racial slurs.

Both sides now move for summary judgment. Malagon filed his motion after the deadline set in the scheduling order. Crescent moves to strike Malagon's motion as untimely and moves to strike his summary judgment evidence.⁴ Crescent also moves to strike two of Malagon's expert witnesses, contending that the expert reports do not comply with Fed. R. Civ. P. 26(a)(2)(B).

---

³For ease of reference, unless otherwise stated, citations to briefs and appendixes refer to those related to Crescent's motion for summary judgment.

⁴Because the court is denying Malagon's summary judgment motion on the merits, it denies as moot Crescent's motions to strike Malagon's summary judgment motion and Malagon's summary judgment evidence.

II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

To be entitled to summary judgment on a claim or defense for which it will have the burden of proof at trial, a party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the moving party must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l*

*Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

The court will first consider both parties' summary judgment motions as they relate to Malagon's claim that Crescent violated the ADA by failing to reasonably accommodate his disability.

A

Under the ADA

> [a] prima facie case [for failure to accommodate] requires that the plaintiff show "(1) the employer is covered by the statute; (2) [he] is an individual with a disability; (3) [he] can perform the essential functions of the job with or without reasonable accommodation; and (4) the employer had notice of the disability and failed to provide accommodation."

*Bennett v. Dall. Indep. Sch. Dist.*, 936 F.Supp.2d 767 (N.D. Tex. 2013) (Fitzwater, C.J.) (quoting *Mzyk v. Ne. Indep. Sch. Dist.*, 397 Fed. Appx. 13, 15 n.3 (5th Cir. 2010) (per curiam)). Possible reasonable accommodations under the ADA include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

The ADA does not require an employer to make an accommodation that would

impose an undue hardship on the operation of its business. *Id.* at § 12112(b)(5)(A). Undue hardship is an affirmative defense. An employer bears the burden of showing that a requested reasonable accommodation would impose an undue hardship by pointing to the existence of various factors the court considers under § 12111(10)(B).[5] *Riel v. Elec. Data Sys. Corp.*, 99 F.3d, 678, 682 (5th Cir. 1996) ("Ultimately, the employer bears the burden of proof for [undue hardship] because [it is an] affirmative defense[] under the language of the statute.").

Malagon contends that he requested a schedule change from high-volume weekend shifts to low-volume weekday shifts as an accommodation for his disabilities. Crescent concedes that a fact issue exists as to whether Crescent had sufficient notice of his disability, but it maintains that notice is immaterial because the request to change shifts was not a

---

[5]The court is to consider:

> (i) the nature and cost of the accommodation needed under this chapter;
> (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
> (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
> (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12111(10)(B).

reasonable accommodation. Crescent contends that the request posed an undue hardship because Crescent's business needs required that Malagon be present during high volumes of business. It also posits that the request was unreasonable because Crescent did not have a position open for a weekday supervisor, and the change would have exempted Malagon from an essential function of his job.[6] Crescent therefore contends that it had no obligation to fulfill Malagon's request because the request was unreasonable. Crescent does not argue for summary judgment on Malagon's reasonable accommodation claim on any other ground.

B

1

The court considers first whether Crescent has met its burden of establishing beyond peradventure that changing Malagon's schedule would have imposed an undue hardship considering Crescent's business needs. Crescent contends that Malagon's request to work less busy nights rather than weekend nights "would [have] adversely impact[ed] the operations of the hotel during peak times when it is most essential that a valet supervisor be present." D. Br. 12. Crescent cites Fulce's declaration in which he avers that "Malagon's request for a schedule change would impose an undue hardship on the operation of the business due to the inherent nature of his role as a supervisor. Malagon was required to be present during high demand times to monitor garage traffic and supervise valet drivers." D.

---

[6]Crescent's brief often uses the terms "undue hardship" and "unreasonable accommodation" interchangeably. The distinction between the two concepts is important, however, because it affects who has the burden of proof. *See supra* § III(A). The court will refer to the correct standard when discussing Crescent's arguments.

App. 101. This conclusory statement does not provide the information that the court must consider when considering the § 12111(10)(B) factors.

Crescent also cites an excerpt from Malagon's deposition and asserts that he "testified the essential functions of his job as a valet supervisor included the need to be present during weekends and high demand times, which were critical for the business operations of the hotel." D. Br. 16. The court disagrees with this characterization of Malagon's testimony.[7] At most, Malagon testified that he *could be working* during high-demand times, and, if he did, one of his duties as a valet parking supervisor was to monitor the flow during these high-demand times. D. App. 61. He did not testify that "the essential functions of his job as a valet supervisor included the need to be present during weekends and high demand times."

Crescent points to no other evidence that, considered alone or in combination with the

---

[7]The excerpt that Crescent cites reads in full:

> [Q.] In your job as a valet parking supervisor, you understood that you *could be working* in high-demand times; is that right?
> A. Yes, I understand.
> Q. And, in fact, one of your duties as a valet supervisor was to monitor the flow during these high-demand times; is that right?
> A. I understand, yes.
> Q. And one of the only ways to perform these duties was to actually be present at your job; is that correct?
> A. That's true, yes.
> Q. You couldn't work from home, for instance, right?
> A. Right.

D. App. 61-62 (emphasis added).

- 8 -

evidence already discussed, establishes beyond peradventure that granting Malagon's request to change his work schedule would have imposed an undue hardship on the operation of Crescent's business.

2

Crescent also maintains that it is entitled to summary judgment because Malagon requested a reassignment to another position, and he cannot meet his burden of showing that another position was available.

Under the ADA "reassignment to a different job may be a reasonable accommodation, but '[t]he plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform.'" *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017) (alteration in original) (quoting *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007)). Crescent cites *Esparza v. Bank of America, N.A.*, 2013 WL 5208024, at *2 (N.D. Tex. Sept. 17, 2013) (Fitzwater, C.J.), in which the plaintiff, a bank manager at a location that was open extended hours, requested to be transferred to another location that was open standard hours. The plaintiff did not contend that this was a request for a schedule change, and this court considered her transfer request to be a request for reassignment to a different job. *Id.* at *13. Because the plaintiff did not adduce evidence of a vacancy for which she would have been qualified at a standard hour bank, the court concluded that she had not met her burden of showing that the reassignment she requested was a reasonable accommodation. *Id.*

In the present case, however, Malagon requested that he remain in his position as a

valet parking supervisor, but that he be permitted to work different days and fewer hours. Malagon refers to this as a request for a schedule change, not for reassignment to another position, and a reasonable jury could find that Malagon's request was not one for reassignment to a different job, as Crescent avers. A reasonable jury could find that Malagon neither requested to be moved to a different role at the Adolphus, *see Moss*, 851 F.3d at 419 (request for move within department from deputy constable to "light duty position" was request for reassignment to different job), nor requested reassignment to a different location with different operating hours, *see Esparza*, 2013 WL 5208024, at *2. Rather, the jury could reasonably find that he only requested that Crescent modify his work schedule, which is recognized as a reasonable accommodation under the ADA. *See* 42 U.S.C. § 12111(9)(B); *see also Schilling v. La. Dep't of Transp. & Dev.*, 2014 WL 3721959, at *8-9 (M.D. La. July 28, 2014) (considering employee's request to move from five- to four-day schedule as request for schedule modification). Because a schedule change is a reasonable accommodation, Crescent bears the burden of establishing that Malagon's new schedule would have imposed an undue hardship. *See Riel*, 99 F.3d at 682. As the court has explained, *see supra* § III(B)(1), Crescent has failed to adduce sufficient evidence to meet this burden. Accordingly, Crescent is not entitled to summary judgment on this ground.

3

Crescent also contends that Malagon's request was unreasonable because he asked that Crescent exempt him from one of the essential functions of his position: performance of his duties during the busiest times. "As a matter of law, it is an unreasonable

accommodation for the employer to have to exempt the employee from performance of an essential function of the job." *Jones v. Kerrville State Hosp.*, 142 F.3d 263, 265 (5th Cir. 1998) (per curiam). Crescent cites Malagon's job description, which stated he was responsible for "prompt and efficient handling of all customer needs [to] ensure[] that standards of service and safety are met to all valet parking customers." D. App. 85. Citing Fulce's declaration, Crescent contends that the parking garage "could not function efficiently or meet its standards for customer service during its busiest times—weekend nights—without the presence of a valet supervisor." D. Br. 17. Crescent concludes that Malagon's presence at the garage's busiest times was an essential function of his job.

The court concludes that there is a genuine issue of material fact concerning whether Malagon's presence at the garage during its busiest times (weekend nights) was an essential function of his supervisor position. Stated summarily,[8] Crescent acknowledges in its brief that supervisors are scheduled on nights other than the busiest (weekend nights). *See, e.g., id.* at 12 ("Plaintiff testified there was already a supervisor scheduled for Monday and Tuesday nights[.]"). A reasonable jury could find that a person holding the supervisor position could have worked in that capacity on the least busiest nights as well as the busiest nights. Accordingly, to establish an undue hardship based on Malagon's absence during

---

[8]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

high-demand times, Crescent must prove that it was an essential function of his position as supervisor that he work during the busiest times. But the job description that Crescent submits describes the general role of "Valet Parking Supervisor." D. App. 85. And the evidence in the summary judgment record would permit a reasonable jury to find that it was not an essential function of his position as supervisor that he work during the busiest times.

C

Because Crescent has failed to demonstrate that it is entitled to summary judgment, and because the court concludes that a genuine issue of material fact exists, the court denies both parties' motions for summary judgment on Malagon's ADA-based reasonable accommodation claim.

IV

The court now considers Malagon's claim for retaliation under the ADA.[9]

A

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Because Malagon relies on circumstantial evidence in support of his ADA retaliation claim, the court

---

[9]Malagon also asserts a claim for retaliation under Title VII, but because he did not exhaust any Title VII claims before the EEOC, the claim is not properly before the court. *See infra* § VI.

proceeds under the *McDonnell Douglas*[10] burden-shifting analysis. *See Miller v. Metrocare Servs.*, 2015 WL 477233, at *15 (N.D. Tex. Feb. 5, 2015) (Fitzwater, J.), *aff'd*, 809 F.3d 827 (5th Cir. 2016). "To establish a prima facie case of retaliation under the ADA . . . a plaintiff must show that (1) [he] participated in an activity protected under the statute; (2) [his] employer took an adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. La. Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation," *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007) (internal citation omitted), which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive, *Seaman*, 179 F.3d at 301. To avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question whether the employer would not have taken the action "but for" the protected activity. *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996) (citation and internal quotation marks omitted).

An employee need not be fired to have suffered an adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (applying constructive

---

[10]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

- 13 -

discharge to Title VII). "A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign." *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771 (5th Cir. 2001), *abrogated on other grounds by Wheat v. Fla. Parish Juvenile Justice Comm'n*, 811 F.3d 702 (5th Cir. 2016). To determine whether a constructive discharge has occurred, the court considers the following factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*McCoy*, 492 F.3d at 557. "The inquiry is an objective, 'reasonable employee,' test under which we ask 'whether a reasonable person in the plaintiff's shoes would have felt compelled to resign.'" *Id.* (quoting *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004)).

B

Malagon's allegations only address factor five. He contends that he was regularly harassed by coworkers and by Fulce. But Malagon has submitted no evidence that would enable a reasonable jury to find that this harassment was "calculated to encourage the employee's resignation[.]" *McCoy*, 492 F.3d at 557. The court therefore concludes that a reasonable jury could not find that Malagon was constructively discharged. Because a reasonable jury could only find that Malagon voluntarily resigned, it could not find that he

suffered an adverse employment action, as required for his retaliation claim. Accordingly, the court grants Crescent's motion for summary judgment and denies Malagon's motion on this claim.

V

Malagon appears to assert multiple claims under Title VII, including retaliation and discrimination. Crescent contends that Malagon failed to exhaust his administrative remedies as to all of his claims under Title VII.

A

"It is well settled that courts may not entertain claims brought under Title VII as to which an aggrieved party has not first exhausted his administrative remedies by filing a charge of discrimination with the EEOC." *Kretchmer v. Eveden, Inc.*, 2009 WL 854719, at *3 (N.D. Tex. Mar. 31, 2009) (Fitzwater, C.J.) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002); *Bernard v. ATC VanCom*, 2005 WL 139110, at *2 (N.D. Tex. Jan. 20, 2005) (Fitzwater, J.)), *aff'd*, 374 Fed. Appx. 493 (5th Cir. 2010). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor*, 296 F.3d at 378-79. "This requirement serves the dual purposes of affording the EEOC and the employer an opportunity to settle the dispute through conciliation, and giving the employer some warning as to the conduct about which the employee is aggrieved." *Hayes v. MBNA Tech., Inc.*, 2004 WL 1283965, at *3 (N.D. Tex. June 9, 2004) (Fitzwater, J.) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

"The lawsuit that follows [a timely charge with the EEOC] is limited in scope to the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination." *Id.* (citing *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990)). "In other words, the complaint may encompass any kind of discrimination 'like or related to' allegations contained in the EEOC charge." *Id.* (quoting *Sanchez*, 431 F.2d at 466). This test strikes a balance between two competing Title VII policies.

> On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance.

*Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006) (internal quotation marks, citations, emphasis, and brackets omitted).

B

In Malagon's EEOC complaint, he checked the boxes for discrimination based on "retaliation" and "disability." D. App. 90. He did not mention Title VII or any type of discrimination that Title VII prohibits (e.g., race). Instead, he based his retaliation and disability discrimination claims on the ADA, stating: "I believe I was discriminated against based on my disability in violation of the Americans with Disabilities Act of 1990, as amended; and retaliated against for participating in a protected activity of requesting a

reasonable accommodation in violation of the Americans with Disabilities Act of 1990, as amended." *Id.*

Because Malagon relied explicitly on the ADA for his discrimination and retaliation claims and did not mention Title VII or any type of discrimination that it prohibits, the EEOC investigation that could reasonably have been expected to grow out of the charge of discrimination would have been limited to disability discrimination and retaliation claims. Because Malagon did not exhaust his Title VII claims, these claims must be dismissed. The court therefore grants summary judgment in favor of Crescent on Malagon's Title VII claims and denies Malagon's motion in this respect.

VI

Crescent also moves under Rule 37(c)(1) to strike two of the three expert witnesses whom Malagon included in his August 10, 2016 disclosure of expert witnesses: Dr. Navarro and Brannon La Force. Crescent maintains that the expert reports Malagon submitted do not satisfy Rule 26(a)(2)(B). Malagon has not responded to the motion.

Although Crescent appears to be correct in asserting that the reports do not comply with the requirements of Rule 26(a)(2)(B),[11] Crescent's motion to strike them under Rule 37(c)(1) is premature. Rule 37(c)(1) provides that the court may strike a witness "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)[.]" Rule

---

[11]At a minimum, neither report appears to include a list of cases in which the witness has previously testified or a statement of the compensation to be paid for the study and testimony. *See* Rule 26(a)(2)(B)(v) & (vi).

26(a)(2)(E) requires a party to supplement expert witness reports when required under Rule 26(e). And under Rule 26(e)(1)(A), a party must supplement its expert report "if the party learns that in some material respect the [report] is incomplete or incorrect[.]" Any corrections must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due, which is 30 days before trial. *See* Rule 26(a)(3)(B) & (e)(2). Because the deadline for Malagon to supplement (and therefore to correct) his reports has not expired, his failure to comply with Rule 26(a)(2)(B) at this time does not warrant striking the expert reports. Accordingly, the court denies Crescent's motion to strike without prejudice on the ground that it is premature.

\* \* \*

For the foregoing reasons, the court grants in part and denies in part Crescent's motion for summary judgment, denies Malagon's motion for summary judgment, denies without prejudice Crescent's motion to strike expert witnesses as premature, and denies Crescent's motions to strike Malagon's summary judgment motion and evidence as moot.

**SO ORDERED**.

June 12, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE